# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| G. Lee Trussell,<br>Bruno E. Carrara<br>and Jerry D. Geist,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>Energy & Technology<br>Company, Ltd.,<br>a Bermuda Corporation, and<br>E-Tech North America, Ltd.,<br>a Delaware Corporation,<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Civil No. 02-1337-RLP/LFG |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

## FINDINGS OF FACT

### GENERAL

1.    That the Defendant Energy & Technology Company, Ltd., (ETC) is a limited liability company organized and existing under the laws of Bermuda. *See Pretrial Order, Doc 91, Sec. (IV)(A) Stipulated Factual Contentions Fact No 1.*

2.    That the Defendant E-Tech North America, Ltd., (E-Tech) is a corporation organized and existing under the laws of the State of Delaware. *See Pretrial Order, Doc 91, Sec. (IV)(A) Stipulated Factual Contentions Fact No 2.*

3.    That ETC adopted Bye-Laws at its first General Meeting on March 28, 2000. *Testimony: Page 211 line 8 through Page 211 line11*

4.    That the said Bye-Laws govern the management, administration and conduct of ETC. *Plaintiff Exhibit 19; Defendant Exhibit HN:  Testimony: Page 231 line 25 through Page 232 line3*

5.    That, on April 25, 2000, ETC entered into a Developers Agreement with Kingsland Limited which provided for revenue of ten million dollars ($10,000,000.00) total over a two-year fixed term. *Plaintiff Exhibit 20; Testimony: Page 43 line 9 through Page 44 line 4 and Page 147 line 5 through line 7*

6.    That the said Developers Agreement expired on April 24, 2002 and was not renewed extended or replaced. *Plaintiff Exhibit 20; Testimony: Page 151 line 5 through Page 151 line9*

## PLAINTIFFS' COUNT I

7.    That Jerry D. Geist (Mr. Geist) was a Senior Officer of ETC. *Plaintiff Exhibit 18; Testimony: Page 41 line 20 through 41 Page 25 line :*

8.    That G. Lee Trussell (Mr. Trussell) was a Senior Officer of ETC. *Plaintiff Exhibit 19;*

*8a(alternatively).*    That G. Lee Trussell (Mr. Trussell) was an Officer of ETC. *Plaintiff Exhibit 19*

9    That Bruno E. Carrara (Mr. Carrara) was a Senior Officer of ETC. *Plaintiff Exhibit; Defendant 19*

*9a(alternatively)..*    That Bruno E. Carrara (Mr. Carrara) was an Officer of ETC. *Plaintiff Exhibit; Defendant 19*

### The April 2000 "Employment Commitment Letters"

10.    That Mr. Geist's Employment Commitment Letter required a seventy-five percent (75%) super-majority resolution of the Shareholders in General Meeting. *Plaintiff Exhibit 19; Defendant Exhibit HN §56.2:*

11.    That Mr. Trussell's Employment Commitment Letter required a seventy-five percent (75%) super-majority resolution of the Shareholders in General Meeting. *Plaintiff Exhibit 19; Defendant Exhibit HN §56.2:*

*11a(alternatively)...*    That Mr. Trussell's Employment Commitment Letter required the approval of the Board of Directors. *Plaintiff Exhibit 19; Defendant Exhibit HN§83-87:*

12.    That Mr. Carrara's Employment Commitment Letter required a seventy-five percent (75%) super-majority resolution of the Shareholders in General Meeting. *Plaintiff Exhibit 19; Defendant Exhibit HN §83-87:*

12a(alternatively)...    That Mr. Carrara's Employment Commitment Letter required the approval of the Board of Directors *Plaintiff Exhibit 19; Defendant Exhibit HN§56.2*

13.    That no seventy-five percent (75%) super-majority approval resolution for any one or more of the Employment Commitment Letters was ever sought or granted. *Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

13a(alternatively)...    That no seventy-five percent (75%) super-majority approval resolution for Mr. Geist's Employment Commitment Letter was ever sought or granted and no Board resolution approving Mr. Trussell's and Mr. Carrara's Employment Commitment Letters was ever sought or granted. *Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

14.    The wording of the Employment Commitment Letters is unclear and ambiguous in relation to termination and, further, there was no actual or apparent authority to create obligations binding ETC beyond the two-year fixed term. *Plaintiff Exhibit 19,21,22,23: Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

15.    That the Plaintiffs did not disclose the Employment Commitment Letters to the Shareholders or the Board of Directors. *Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

16.    That the draft budget was one page only and did not detail the Plaintiffs' salaries and compensation. *Defendant Exhibit BK: Testimony: Page 426 line 13 through Page 426 line16*

17.    That the draft budget presented to the First General Meeting on March 28, 2000 was never approved. *Testimony: Page 241 line 12 through Page 242 line 10 and line 18*

18.    That despite such absence of approval and despite significant changes in the Defendants' activities no revised budget was ever prepared or submitted for approval. *Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

19.    That the Plaintiffs' financial and accounting reports concealed the true position with regard to salaries and compensation. *Exhibit Group B: Plaintiff Exhibits 15, 133, 134, 135, 136, 137, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196*

**The June 2002 "Employment Extensions"**

20.    That Mr. Geist's Employment Extension required a seventy-five percent (75%) super-majority resolution of the Shareholders in General Meeting. *Plaintiff Exhibit 19; Defendant Exhibit HN §56.2*

21.    That Mr. Trussell's Employment Extension required a seventy-five percent (75%) super-majority resolution of the Shareholders in General Meeting. *Plaintiff Exhibit 19; Defendant Exhibit HN §56.2*

21a(alternatively)...    That Mr. Trussell's Employment Extension required the approval of the Board of Directors *Plaintiff Exhibit 19; Defendant Exhibit HN § 83-87*

22.    That Mr. Carrara's Employment Extension required a seventy-five percent (75%) super-majority resolution of the Shareholders in General Meeting *Plaintiff Exhibit 19; Defendant Exhibit HN §56.2*

22a(alternatively)...    That Mr. Carrara's Employment Extension required the approval of the Board of Directors. *Plaintiff Exhibit 19; Defendant Exhibit HN § 83-87*

23.    That no seventy-five percent (75%) super-majority approval resolution for any one or more of the Employment Extensions was ever sought or granted. *Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

23a(alternatively)...    That no seventy-five percent (75%) super-majority approval resolution for Mr. Geist's Employment Extension was ever sought or granted and no Board resolution

approving Mr. Trussell's and Mr. Carrara's Employment Extensions was ever sought or granted. *Testimony: Page 207 line 9 through Page 207 line 9*

24.    That the Plaintiffs failed to notify the Shareholders and/or the Board of Directors of the existence and content of the Employment Extensions. . *Testimony: Page 207 line 9 through Page 207 line 9*

25.    That the Employment Extensions did not extend existing obligations, but instead created new obligations of ETC. *Plaintiff Exhibit 21,22,23,80,81,82*

26.    That the changes in the Employment Extensions, including the introduction of constructive termination and the *"golden parachute"* with a value in excess of $1,951,000, exceeded any actual or apparent authority. *Plaintiff Exhibit 19; Defendant Exhibit HN §56(2) § 83-87: Testimony: Page135 line 3 through Page135 line 23*

27.    That the inclusion of additional payments for expenses in Mr. Geist's Employment Extension exceeded any actual or apparent authority. *Plaintiff Exhibit 19; Defendant Exhibit HN §56(2) : Testimony: Page135 line 3 through Page135 line 23:Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

28.    That the inclusion of constructive termination from the office of Chairman of the Board in Mr. Geist's Employment Extension exceeded any actual or apparent authority *Defendant Exhibit HN §56(2) : Testimony: Page135 line 3 through Page135 line 23*

29.    That the Employment Extensions were made in contemplation of termination rather than continued employment. *Testimony: Page 203 line21 through Page 204 line 7 Testimony: Page 595 line 8 through Page 595 line 13*

30.    That a new Chairman of the Board was elected to replace Mr. Geist as the Chairman of the Board of ETC. *Plaintiff Exhibit 92*

## PLAINTIFFS' COUNT II

**Albuquerque Lease,**

31.   That E-Tech attempted to sub-lease the premises at 931 San Pedro, Albuquerque from Santa Fe Center Enterprises, which in turn, leased the same from Willow Village Shopping Center. Plaintiff Exhibit 30, 89 Testimony: Page 164 line 4 through Page 164 line 13

32.   That Mr. Geist owned Santa Fe Center Enterprises at all material times. *Testimony: Page 20 line 24 through Page 21 line 14*

33.   That Mr. Geist owned Willow Village Shopping Center at all material times. *Testimony: Page 20 line 24 through Page 21 line 14*

34.   That Mr. Geist did not disclose his ownership of Willow Village Shopping Center to the Shareholders, the General Meeting or the Board of Directors *Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

35.   That Mr. Geist did not disclose the differences between the sub-lease between Santa Fe Center Enterprises and E-Tech and the master lease between Willow Village Shopping Center and Santa Fe Center Enterprises. *Plaintiff Exhibit 30,89 Robert Bailey Deposition Testimony: Page 9 line 6 through Page 9 line 10*

36.   That the said differences resulted in a private profit to Mr. Geist. *Robert Bailey Deposition Testimony: Page 20 line 24 through Page 21 line 14*.

37.   That Mr. Geist failed to disclose his personal interest. *Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

38.   That the Bye-Laws required such disclosure. *Plaintiff Exhibit 19; Defendant Exhibit HN § 82*

39.   That the sub-lease was not signed by the parties in interest. *Plaintiff Exhibit 30,89: Testimony: Page 104 line 16 through Page 104 line 21*

40.   That E-Tech attempted to extend the sub-lease for seven (7) months as at July 1, 2002. *Plaintiff Exhibit 89*

41.    That the said extension was made without any Shareholder or Board of Directors approval being sought or granted. *Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

42.    That the Bye-Laws require such approval to be obtained. *Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

43.    That the said extension was made three (3) days after Mr. Geist declared the intent to close E-Tech's Albuquerque office. *Defendant Exhibit DM; Plaintiff Exhibit 89*

44.    That the said extension was not signed by the parties in interest *Exhibit 89*

45.    That Mr. Geist referred in correspondence to the "property manager" (as if he were a disinterested third party) and participated in demanding payment without disclosing Mr. Geist's relationship to the said property manager or his personal interest in Willow Village Shopping Center. *Plaintiff Exhibit CR*

**Monaco Lease**

46.    That in or about February/March 2001, Mr. Geist executed a two-year extension of the lease for the premises in Monaco. *Defendant Exhibit 11, 12*

47.    That this extension was a commitment exceeding the period of ETC's only known source of revenue. *Defendant Exhibit 11, 12, 20,*

48.    That such act required budgetary approval, Shareholder approval and/or Board of Directors approval *Plaintiff Exhibit19; Defendant Exhibit HN*

49    That no such approval was ever sought or granted. *Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

50.    Mr. Geist did not disclose the lease extension to the Shareholders, the General Meeting or the Board of Directors *Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y Testimony: Page 70 line 2 through Page 70 line 21*

51.   In July/August 2002, Mr. Geist barred the then Chairman and another director of ETC from access to the Monaco premises. *Defendant Exhibit CR Testimony: Page 219 line 7 through Page 219 line 17*

52.   In August 2002, Mr. Geist notified the Board of Directors that he had unilaterally closed the Monaco office. *Defendant Exhibit CR, AK*

53.   For the period of Mr. Geist's claim (June 2002 to June 2003), ETC derived no benefit from the Monaco office.

## PLAINTIFFS' COUNT III

54.   That the Defendants made repeated requests and demands for access to and delivery of all documents, records, files and items rightfully belonging to ETC and E-Tech. *Defendant Exhibit H, I, J, L, M, N, P, Q, R, S, T, U, W, Y*

55.   That the Plaintiffs failed and refused to deliver the same to the Defendants.

## PLAINTIFFS' COUNT IV

56.   That the Plaintiffs had operational and management control at all material times and had sole custody and control of all relevant documents. *Defendant Exhibit CR, AK, AJ, AI: Testimony: Page 189 line 2 through Page 190 line 7.*

57.   That on July 1, 2002, Kingsland Limited made specific demand for compliance by ETC with Clause 7 of the Developers Agreement. *Plaintiff Exhibit 90*

58.   That ETC failed to comply with the said specific request of Kingsland Limited and, consequently, failed to comply with Clause 7 of the Developers Agreement.

## PLAINTIFFS' COUNT V

59.   That the Plaintiffs actions are specifically exempted from indemnification under the Bye-Laws and applicable law. *Plaintiff Exhibit 19; Defendant Exhibit HN § 124 through 128: NMSA 1978 §53-11-4.1.*

## DEFENDANTS' COUNTERCLAIM I

60.     That the Plaintiffs represented their salaries within ETC and E-Tech as being the same or very close to those salaries previously received from Howard Energy. *Testimony: Page 338 line 23 through Page 338 line 25; Testimony: Page 461 line 5 through Page 461 line19*

61.     That Mr. Trussell's salary within ETC and E-Tech was approximately double his salary previously received from Howard Energy. *Testimony: Page 460 line 16 through Page 462 line 15*

62.     That the Plaintiffs fixed their own salary amounts without approval from the Shareholders in General Meeting or the Board of Directors. *Exhibit Group A: Plaintiff Exhibits 14, 18, 36, 38, 39, 40, 41, 42, 92, 95, 102 and Defendant Y*

63.     That, through their intentionally misleading financial and other reporting, the Plaintiffs denied the Shareholders, the General Meeting and the Board of Directors the opportunity to know, review, approve or disapprove the salary amounts. *Plaintiff Exhibit 94; Defendant Exhibit B: Testimony: Page 447 line 7 through Page 447 line18: Testimony: Page 453 line 9 through Page 453 line 16.: Testimony: Page 425 line 5 through Page 426 line 16: Testimony: Page 423 line 25 through Page 424 line 4:*

64.     That Mr. Geist's Employment Extension effectively increased his salary by $20,000.00 per month and disguised the same by describing it as "expenses" that would have been paid separately and directly by the *Defendants. Plaintiff Exhibit 80;*

65.     That, despite paying themselves excessive salaries and benefits, the Plaintiffs failed to achieve their objective.

## DEFENDANTS' COUNTERCLAIM II

66.     That the Plaintiffs used ETC and E-Tech money to purchase assets that they treated as belonging to themselves personally. : *Exhibit Group C Defendants Exhibits CZ, DA, DB, DC, DD, DE, DF, DG,:BN, BO, BP, BQ, BR, BS, CC, DX, DY, DZ, EA, EC, EE, EF* .

67.   That the Plaintiffs failed to account for any assets. *Testimony: Page 195 line 23 through 197 Page 1 line.*

68.   That the Plaintiffs' said conduct caused harm to the Defendants.

69.   That the Plaintiffs indulged in a lavish lifestyle at the expense of ETC and E-Tech. *Plaintiffs Exhibit 11, 12; Exhibit Group C Defendants Exhibits C2, DA, DB, DC, DD, DE, DF, DG,:BN, BO, BP, BQ, BR, BS, CC: DX, DY, DZ, EA, EC, EE, EF*

70.   That the Plaintiffs knowingly and willfully applied unwritten, unapproved and undisclosed policies and practices with regard to expenses that benefited the Plaintiffs to the detriment of ETC and E-Tech. *Plaintiff Exhibit 210; Testimony: Page 447 line 7 through Page 447 line 18 : Testimony: Page 598 line 15 through Page 599 line 9*

## DEFENDANTS' COUNTERCLAIM III

71.   Paragraphs 31 to 45 above are incorporated herein as if set out in full verbatim.

72.   That Mr. Geist procured and/or participated in fraudulent misrepresentation in an attempt to collect money to his personal benefit. *Plaintiff Exhibit 30, 80, 89, 94; Defendant Exhibit DM, CR Testimony: Page 95 line 11 through Page 96 line 5*

## DEFENDANTS' COUNTERCLAIM IV

73.   That throughout the period from April 2000 to July 2002, the Plaintiffs drew excessive salaries and concealed payments to themselves as expenses. *See Paragraph 60 through 72 above*

74.   That the Plaintiffs refused to allow an inspection of their activities by duly appointed members of the Board of Directors. *See Paragraph 54 through 55 above*

75.   That the Plaintiffs failed to request proper approval of the Employment Commitment Letters and the Employment Extensions. *See Paragraph 10 through 30 above*

76.   That the Plaintiffs failed to disclose the Employment Commitment Letters and the Employment Extensions to the Shareholders and the Board of Directors. *See Paragraph 10 through 30 above*

10

77.    That the Plaintiffs actively concealed their salaries from the Shareholders and the Board of Directors by delivering inaccurate, misleading and confusing financial reports. *See Paragraph 63 above*

78.    That the Plaintiffs failed to seek approval for the new terms and conditions and the new obligations that the Employment Extensions attempted to create. *See Paragraph 10 through 30 above*.

79.    That the Plaintiffs failed to prepare budgets and obtain proper budget approvals as required by the Bye-Laws. *See Paragraph 18 above*

80.    That the Plaintiffs' financial and other reporting concealed and confused the position in relation to salaries, expenses and assets and did not give a true and fair view of the state of ETC's affairs and show and explain its transactions. *Defendant Exhibit HN §116 ; Exhibit Group B: Plaintiff Exhibits 15, 133, 134, 135, 136, 137, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196*.

81.    That the leasing arrangements for the Albuquerque office involving Willow Village Shopping Center, Santa Fe Center Enterprises and E-Tech were not disclosed and resulted in a secret profit for Mr. Geist. *See Paragraph 31 through 45 above*

82.    That the Plaintiffs purported to extend the Albuquerque sub-lease three (3) days after declaring intent to close E-Tech's Albuquerque office. *See Paragraph 31*

83.    That Mr. Geist fraudulently misrepresented matters in relation to the Albuquerque sub-lease in an attempt to obtain personal benefit. *See Paragraph 31 through 45 above*

84.    That Mr. Geist extended the lease of the Monaco premises without proper approval of the Shareholders and Board of Directors. *See Paragraph 46 through 53 above*

85.    That Mr. Geist failed to disclose the Monaco lease extension to the Shareholders or the Board of Directors. *See Paragraph 46 through 53 above*

86.   That the Plaintiffs failed and refused to comply with the legitimate requests of ETC directors for delivery and production of documents and records and for access to premises. *Defendant Exhibit: H, I, J, L, M, N, P, Q, R, S, T, U, W, X, Y*

87.   That the Plaintiffs caused ETC to be in breach of the Developers Agreement with Kingsland Limited. *See Paragraph 54 through 58 above*

88.   That the Plaintiffs knowingly and willfully applied policies and practices in relation to assets and expenses that benefited themselves to the detriment of the Defendants. *See Paragraph 66 through 69 above*.

89.   That the Plaintiffs attempted to bind ETC to self-preferential obligations and that this was done in contemplation of termination of employment. *See Paragraph 24 above*.

90.   That Mr. Geist failed to disclose to the Shareholders that their proposed act in removing him from the office of Chairman of the Board would result in a substantial liability (in excess of $1,400,000.00), to the personal benefit of Mr. Geist, under the peculiar provisions of his unapproved and undisclosed Employment Extension. *See Paragraph 24 above*.

91.   That the Plaintiffs did not conduct themselves in accordance with their duty of utmost good faith, trust, confidence and candor as fiduciaries and failed to act with the highest degree of honesty and loyalty toward the Defendants and in the best interests of the Defendants. (*Black's Law Dictionary Fifth Addition 1979 Page 563*).

## PLAINTIFFS' AFFIRMATIVE DEFENSES

## OF

## RATIFICATION, WAIVER, ACQUIENCE, ESTOPPEL AND LACHES

92    That the Plaintiffs neither obtained approval for nor disclosed the Employment Commitment Letters, Employment Extensions, salary and remuneration information, the budget, the interest in the Albuquerque sub-lease, the extension of the Monaco lease, the policies and

practices in relation to assets and expense reimbursement and other relevant records and information to the Shareholders or the Board of Directors.

93      That the Plaintiffs suffered no detriment or disadvantage consequent upon the Shareholders inability to detect the concealment and misrepresentation practiced by the Plaintiffs.

94      That as soon as events occurred that would place the Shareholders reasonably on notice as to any concerns with the operation and management of the Defendants, the Shareholders took action to investigate and address the same. *Testimony: Page 709 line 11 through Page 712 line 9; Testimony: Page 511 line 21 through Page 512 line 15.*

95.     That the Defendants' counter claims are not barred by any provisions of the Bye-Laws.

## CONCLUSIONS OF LAW

### GENERAL

a.   That ETC and E-Tech are bound by the laws of New Mexico and by their Bye-Laws.

b.   That under their Bye-Laws, ETC and E-Tech are operated and managed by their officers.

c.   Non-disclosure of the material fact is equivalent to an assertion that the fact does not exist and therefore any contracts not appropriately presented to the Shareholders in General Meeting and/or the Board of Directors do not exist.

### PLAINTIFFS' COUNT I

d.   That Mr. Geist was a Senior Officer within the definition of ETC's Bye-Laws.

e.   That Mr. Trussell and Mr. Carrara were Senior Officers of ETC by virtue of their authorities, powers, responsibilities and duties and were effectively General Managers within the definition of Senior Officer in ETC's Bye-Laws.

f.   That the Bye-Laws of ETC require a seventy-five percent (75%) super-majority of the Shareholders in General Meeting to fix salaries and remuneration of Senior Officers.

g.   In the alternative, if Mr. Trussell and Mr. Carrara were not Senior Officers, then ETC's Bye-Laws required Board of Directors approval for their terms of employment.

h.   That no approval of the Shareholders or Board of Directors was obtained for the Employment Commitment Letters and therefore the same are void and of no effect.

i.   That no approval of the Shareholders or Board of Directors was obtained for the Employment Extensions and therefore the same are void and of no effect.

j.   That Mr. Geist lacked actual authority to bind ETC to the Employment Commitment Letters and the Employment Extensions.

k.   That Mr. Geist lacked apparent authority to bind ETC to the Employment Commitment Letters and the Employment Extensions.

l.   That Mr. Geist, as an interested party, should not have signed for ETC on his own Employment Commitment Letter and Employment Extension and that the said agreements are void as a consequence.

m.   That the Employment Extensions are invalid for want of consideration on one or both of the following grounds:

   (i)   gross inadequacy/disparity of consideration justifies the denial of specific performance; and

   (ii)   lack of bargained for consideration.

n.   Mr. Geist's Employment Extension is invalid for lack of mutual consent because there was no clear understanding as to the terms and their application.

o.   That Mr. Geist was terminated from the office of Chairman of the Board of ETC by definite action and that the constructive termination provision of his Employment Extension does not apply in that circumstance.

p.   That the Employment Commitment Letters and Employment Extensions were never ratified because:

   (i)   no material facts were ever disclosed by the Plaintiffs; and

   (ii)   ratification was never requested.

q.   That the defects in the Employment Commitment Letters and the Employment Extensions were never waived because:

   (i)   the material facts were not disclosed by the Plaintiffs; and

   (ii)   there was no voluntary, intentional relinquishment of a known right.

r.   That there was no acquiescence to the Employment Commitment Letters and Employment Extensions because:

   (i)   the material facts were not disclosed by the Plaintiffs;

   (ii)   there was no other evidence or reason to know of the existence of the Employment Extensions;

15

(iii)  without that knowledge, Defendants could not know that they could impeach the agreements or that Defendants had a right to enforce them; and

(iv)  there was no neglect for any period of time or in any manner that would entitle the Plaintiffs to fairly assume abandonment of such right.

## PLAINTIFFS' COUNT II

**Albuquerque Lease**

s.   That Mr. Geist's failure to disclose his interest in Willow Village Shopping Center rendered void from inception the sub-lease and its extension between Santa Fe Center Enterprises and E-Tech.

t.   That Mr. Geist's failure to disclose the differences in the master lease between Willow Village Shopping Center and Santa Fe Center Enterprises and the sub-lease and its extension between Santa Fe Center Enterprises and E-Tech rendered void from inception the said sub-lease and extension.

u.   That the said sub-lease and extension are invalid for want of proper execution in that they were not signed by the parties in interest.

v.   That the lease arrangements between E-Tech, Santa Fe Center Enterprises and Willow Village Shopping Center was undisclosed self-dealing.

w.   That the sub-lease and extension, because of the self-dealing involved, required approval and are void for lack of approval.

x.   That entering into the sub-lease extension three (3) days after declaring intent to close the relevant office was an act in bad faith which renders void the said extension.

y.   That Mr. Geist's reference in correspondence to the property manager and participation in demanding payment without disclosing his self-interest were done in bad faith and amount to gross misrepresentation.

**Monaco Lease**

z.    That the second year of the two-year extension made in February/March 2001 was entered into without any approval and is not the responsibility or liability of ETC.

aa.   That Mr. Geist's actions in:

    (i)    barring the Chairman and directors of ETC from access to the leased premises; and

    (ii)   unilaterally closing the office facility

removes the responsibility for the lease from ETC and places it with himself.

## PLAINTIFFS' COUNT III

ab.   That any obligation, howsoever arising, of the Plaintiffs to maintain the Defendants' confidential documents, records, files, items and information shall be relieved upon delivery of the same to the Defendants in the capacity of rightful owners.

## PLAINTIFFS' COUNT IV

ac.   That are no claims from Kingsland Limited or Valentia Exploration & Production Limited before this Court that require determination.

## PLAINTIFFS' COUNT V

ad.   That the Plaintiffs' claims:

    (i)    are specifically exempted from indemnification under the Bye-Laws in that they arise out of fraud and/or are to recover a gain, personal profit or advantage to which the Plaintiffs are not legally entitled; and

    (ii)   are specifically exempted from indemnification under applicable law in that they arise on the basis that personal benefit was improperly received.

## DEFENDANTS' COUNTERCLAIM I

ae.   That the salaries were not approved, not disclosed and intentionally concealed from the Shareholders and Board of Directors and therefore are excessive.

af.      That the Plaintiffs are ordered to repay to the Defendants the sum of $1,708,999.65. (See Schedule 1 attached).

## DEFENDANTS' COUNTERCLAIM II

ag.      That Plaintiffs failure to account for assets purchased with corporate funds was waste.

ah.      That Plaintiffs application of unapproved and undisclosed policies and practices with regard to expenses benefited the Plaintiffs to the detriment of the Defendants and was waste.

ai.      This Court here with orders an accounting to be performed by a Master.

ai *(alternatively)..* That the Plaintiffs are ordered to repay to the Defendants the sum of $323,747.83 (See Schedule 2 attached).

## DEFENDANTS' COUNTERCLAIM III

aj.      See Conclusions *r to x* inclusive.

ak.      That the Plaintiffs are ordered to repay to the Defendants all sums paid under the Albuquerque sub-lease being One Hundred Fifty One Thousand Two Hundred Fifty One Dollars and Ninety One Cents ($151,251.91)

## DEFENDANTS COUNTERCLAIM IV

al.      That the Plaintiffs breached their fiduciary duty to the Defendants in the following particulars:

   (i)      drew excessive salaries and concealed payments to themselves as expenses;

   (ii)     refused to allow an inspection of their activities by duly appointed members of the Board of Directors;

   (iii)    failed to request proper approval of the Employment Commitment Letters and the Employment Extensions;

   (iv)     failed to disclose the Employment Commitment Letters and the Employment Extensions to the Shareholders and the Board of Directors;

(v)     actively concealed their salaries from the Shareholders and the Board of Directors by delivering inaccurate, misleading and confusing financial reports;

(vi)    failed to seek approval for the new terms and conditions and the new obligations that the Employment Extensions attempted to create;

(vii)   failed to prepare budgets and obtain proper budget approvals as required by the Bye-Laws;

(viii)  their financial and other reporting concealed and confused the position in relation to salaries, expenses and assets and did not give a true and fair view of the state of ETC's affairs and show and explain its transactions;

(ix)    did not disclose the leasing arrangements for the Albuquerque office involving Willow Village Shopping Center, Santa Fe Center Enterprises and E-Tech resulting in a secret profit for Mr. Geist;

(x)     purported to extend the Albuquerque sub-lease three (3) days after declaring intent to close E-Tech's Albuquerque office;

(xi)    grossly misrepresented matters in relation to the Albuquerque sub-lease in an attempt to obtain personal benefit;

(xii)   extended the lease of the Monaco premises without proper approval of the Shareholders and Board of Directors;

(xiii)  failed to disclose the Monaco lease extension to the Shareholders or the Board of Directors;

(xiv)   failed and refused to comply with the legitimate requests of ETC directors for delivery and production of documents and records and for access to premises;

(xv)    barred Board Members from accessing the Monaco facility;

(xvi)   caused ETC to be in breach of the Developers Agreement with Kingsland Limited;

(xvii)   knowingly and willfully applied policies and practices in relation to assets and expenses that benefited themselves to the detriment of the Defendants;

(xviii)   attempted to bind ETC to self-preferential obligations and that this was done in contemplation of termination of employment;

(xix)   failed to disclose to the Shareholders that their proposed act in removing him from the office of Chairman of the Board would result in a substantial liability (in excess of $1,400,000.00), to the personal benefit of Mr. Geist, under the peculiar provisions of his unapproved and undisclosed Employment Extension; and

(xx)   generally did not conduct themselves in accordance with their duty of utmost good faith, trust, confidence and candor as fiduciaries and failed to act with the highest degree of honesty and loyalty toward the Defendants and in the best interests of the Defendants.

am.   That the Plaintiffs are ordered to pay to the Defendants damages in the amount of One Million Dollars ($1,000,000.00).

## PLAINTIFFS' AFFIRMATIVE DEFENSES

an.   That the Plaintiffs' affirmative defense of ratification does not lie.

ao.   That the Plaintiffs' affirmative defense of waiver does not lie.

ap.   That the Plaintiffs' affirmative defense of acquiescence does not lie.

aq.   That the Plaintiffs' affirmative defense of estoppel and laches does not lie.

**WHEREFORE** this Court orders judgment in favor of the Defendants, on Plaintiffs' claims and in favor of the Defendants on Defendants' claims and herewith orders the Plaintiffs, jointly and severally, to:

Disgorge excessive salaries in the amount of $1,708,999.00; and;

Repay to the Defendants $323,747.83 as and for wasted corporate assets; and ;

Repay to the Defendants $151,251.91 for rent wrongfully received; and;

Pay Defendants $1,000,000.00 as and for damages for breach of their fiduciary duty; and;

Cost taxed to Plaintiffs,


So Ordered

_____
HONORABLE RICHARD L. PUGLISI
United States Magistrate Judge

### SCHEDULE 1

### DEFENDANTS' COUNTERCLAIM I

### CALCULATION & PROPOSAL

1. Plaintiffs performed some work, regardless of any success or lack thereof, in the period from April 2000 to May 2002 and are entitled to receive fair and reasonable compensation for their efforts.

2. The Evidence established that the salary actually drawn was approximately double that received from Howard Energy immediately prior to commencement of ETC.

3. Further, that fair and reasonable compensation for the Plaintiffs would include an increase of ten percent (10%) to recognize that an increase often applies on a change of employment.

4. Applying this Formula to the actual salaries paid results in the following:

| | |
|---|---|
| Mr. Geist actual salary | $2,557,830.00 |
| Mr. Trussell actual salary | $591,348.00 |
| Mr. Carrara actual salary | $648,599.00 |
| TOTAL | $3,797,777.00 |

| | |
|---|---|
| Fair and reasonable compensation (at 55%) | $2,088,777.35 |
| Repayable to Defendants (at 45%) | $1,708,999.65 |

## SCHEDULE 2

## DEFENDANTS' COUNTERCLAIM II

## CALCULATION & PROPOSAL

Defendants' propose the following:

1.   Defendants have requested the Court to order an accounting because they were barred from access to the records. The Defendants eventually received the relevant records at the close of discovery in December 2003.

2.   Due to the late delivery of such records and information, Defendants have been denied the opportunity to conduct a full and complete analysis in order to quantify precisely their claim for waste of corporate assets.

3.   A detailed accounting ordered by the Court will to be a lengthy and costly process

4.   Accordingly, the court assess an estimated percentage of the total expenses incurred and awards same as liquidated damages.

5.   The sums in question, based on the Plaintiffs' own accounting reports for the period from April 1, 2000 to July 5, 2002 (which may themselves be inaccurate), are as follows:

| | | |
|---|---|---|
| Office Supplies | $219,959.65 | (ETC only) |
| Telephone | $5,932.58 | ($5,853.22 ETC & $79.36 E-Tech) |
| Travel, etc. | $853,346.56 | ($816,733.44 ETC & $36,613.12 E-Tech) |
| TOTAL | $1,079,159.43 | |

6.   Based on  the accounting records, Court awards thirty percent (30%) of this total as adequate compensation for waste of corporate assets. This amounts to the liquidated sum of $323,747.83.

Respectfully submitted:

O'GORMAN & SANDRONI P.C.
ATTORNEYS AND COUNSELORS AT
LAW

ANDREW D. SANDRONI  # 4256
Attorney for Defendants
8050 Watson Road, Suite 240
March 5, 2004
St. Louis, MO 63119-5329
(314) 843-2000
(314) 843-7332

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was mailed, postage prepaid
on the __5ᵗʰ__ day of __March__ 2004 to Aldridge, Grammer, Jeffery & Hammar
P.A., Attn: Kevin Hammar, Attorney at Law, 1212 Pennsylvania N.E., Albuquerque,
NM 87110 and William Darling, Attorney at Law, 2716 San Pedro NE, Suite A, P.O.
Box 3337, Albuquerque, NM 87190-3337.

By: _____